Charles Redd v. Commissioner.
Redd v. Commissioner
Docket No. 7150.
United States Tax Court
1946 Tax Ct. Memo LEXIS 152; 5 T.C.M. (CCH) 528; T.C.M. (RIA) 46154; June 27, 1946
*152 Willis W. Ritter, Esq., for the petitioner. T. M. Mather, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $35,849.05 in the petitioner's income tax for the calendar year 1941. The petitioner contends that his wife and four minor children were partners with him and his cousin in the conduct of a business from June 10, 1941 to the close of that year and that the Commissioner erred in failing to recognize them as partners for income tax purposes. Findings of Fact The petitioner is an individual who resides at LaSal, Utah. His individual income tax return for 1941 was filed with the collector of internal revenue for the district of Utah. The petitioner's father died in 1923. He had organized a corporation known as the LaSal Livestock Company. The corporation was dissolved in 1936 and in 1937 the petitioner and his cousin, Leland W. Redd, formed a partnership in which the petitioner owned a 97 per cent interest and Leland owned the other 3 per cent. The partnership operated under the name of LaSal Livestock Company and is hereafter referred to as LaSal. The petitioner's share of the assets which *153 he placed in the partnership was acquired by him as an heir of his father and by purchase. The principal business of the partnership was the raising of cattle and sheep. The animals were grazed on an area of about 30,000 acres situated in Utah and Colorado. The partnership also operated a general store at LaSal under the direction of a man employed as manager. The petitioner at all times material hereto directed the affairs of LaSal, and a part of the earnings of the partnership was allocated to him as salary for serices rendered. Leland received no part of the earnings as salary. Another cousin of the petitioner, Joseph F. Redd, has assisted the petitioner at all times material hereto in the operation of LaSal. He is an experienced stock man. He was first employed by LaSal in 1928. The practice of LaSal has been to move about 60 per cent of its cattle and about one-half of its sheep from Utah to Colorado in May of each year and to return the cattle to Utah in November or December, and to return the sheep about a month later. Joseph Redd has supervised the operations of LaSal in Colorado and has assisted the petitioner in the management of the business in Utah during the winter *154 months. He hires and discharges men to operate the Colorado ranges, buys and sells cattle and sheep, occasionally negotiates for the purchase or leasing of land, and has authority to write checks on the bank account of LaSal. His authority to act for LaSal has not changed substantially at any time material hereto, except that his authority to write checks was granted sometime between the beginning of 1940 and end of 1942. Joseph Redd has never had any capital investment in LaSal. He has been paid a salary for his services to that partnership, computed upon the basis of the amount of time spent in looking after the affairs of the partnership. His annual salary in recent years has been approximately $1,500. He is an equal partner with the petitioner in another venture known as the Joe Redd Sheep Company. He manages the affairs of that company and has shared equally with the petitioner in net profits which have ranged from about $17,000 to $23,000 in the years from 1941 through 1944. Although Joseph Redd assisted the petitioner in the operation of LaSal and aided in the formulation of its policies, he received his authority from and performed his duties at the direction of the petitioner. *155 The petitioner's decisions in all matters pertaining to LaSal were final. The character of LaSal's business and the manner of its operation were not altered in any material respect during the year 1941. The petitioner married Annaley Neagle. They have four children. The approximate ages of these children in June 1941 were as follows: Catherine Ann, 7 years, Charles Hardison, 5 years, Robert Byron, 2 years, and Paul David, 3 months. The petitioner executed a "Declaration of Gift and Quit Claim Deed" on June 10, 1941, the body of which is as follows: I, Charles Redd, a married man of LaSal, Utah, have given and transferred and do hereby give, transfer, deliver and quit claim to the following persons of LaSal, Utah, the interests set opposite the name of each respective individual in and to what is commonly known as the LaSal Livestock Company, a co-partnership, with its principal place of business at LaSal, San Juan County, State of Utah: An undivided 17 per cent to Annaley Redd An undivided 17 per cent to Catherine Ann Redd An undivided 17 per cent to Charles Hardison Redd An undivided 17 per cent to Robert Byron Redd An undivided 17 per cent to Paul David Redd The *156 property heretofore set over and conveyed and now by this instrument confirmed, assigned, and quit claimed, consists of both real and personal property, to-wit: 1. Approximately 2,000 acres of cultivated land and 15,000 acres of mountain and summer pastures in Utah and Colorado, together with all permits, grazing rights, and privileges belonging thereto. 2. Approximately 22,000 head of sheep and 1600 head of cattle. 3. A general merchandise store at LaSal, Utah. 4. Also all property used in connection with any of the foregoing classes of property and all other property of whatever kind and description belonging to said LaSal Livestock Company. I further state that this is an absolute gift of the said interests in said real and personal property and is not merely an assignment of my future earnings from said LaSal Livestock Company. This instrument is executed in duplicate and one counterpart is this 10th day of June 1941, delivered to the said Annaley Redd for herself and as the natural guardian of the persons of said minor children and for their use and benefit and one counterpart is this 10th day of June 1941, irrevocably delivered to Therald N. Jensen of Price, Utah, *157 for the benefit of said minor children and to be by him delivered to the legal guardian of the estates of my children at such time as such guardian is appointed and qualified. Annaley Redd acknowledged receipt of the above instrument for herself and as natural guardian of the minor children and agreed to act as a partner in the business. Joseph F. Redd agreed at that time to act as guardian of the persons and estate of the four minor children. A petition for letters of guardianship was filed by him in November 1942 and he was appointed guardian of the persons and estates of the children by a court order dated March 8, 1943. A written partnership agreement was drawn up in 1941 describing the partners as the petitioner, his wife, his four children, and Leland Redd, but this agreement was never executed. Leland refused to sign it, but expressed no opposition to the petitioner's plan to share his interest with his wife and children. No written agreement of partnership was executed. The petitioner's wife and children did not bring any new capital into the business of LaSal. The children have never performed any services for LaSal. Annaley Redd has not performed services of any material *158 value for LaSal, although she has assisted at times in keeping records of registered Hereford cattle, has been present when matters of policy were discussed by the petitioner and Joseph Redd, and has made suggestions occasionally. The principal purpose of the petitioner in executing the "Declaration of Gift and Quit Claim Deed" of June 10, 1941 was to effect a saving in income taxes. He also desired to make provision for his wife and children and to instill in them an interest in the livestock business. The petitioner filed a gift tax return for 1941 reporting a gift of $27,542.40 to his wife and each of his four children. The Commissioner determined that the value of each gift was $49,986.42 and assessed a deficiency which was paid. Capital accounts were set up on LaSal's books for Annaley and the four children. Each of these accounts shows an opening entry made on December 31, 1941 in the amount of $32,245.81. A notation explaining each entry indicates that the credit amounts to a 17 per cent interest in the partnership. An offsetting debit of $161,229.05 dated December 31, 1941 appears in the capital account of the petitioner to effectuate a transfer of a 17 per cent capital *159 interest to his wife and each of the four children. The petitioner had a credit balance in his capital account of $183,990.81 prior to the making of these entries. Leland Redd had a credit balance in his account of $5,690.44 which remained unchanged during the period in question. The petitioner had a credit balance in his drawing account on January 1, 1941 of $78,693.13. This amount did not form a part of the alleged gifts. The petitioner received $3,000 in 1941 as "salary." The remainder of LaSal's 1941 earnings, totaling $71,581.43, was credited to the accounts of the petitioner, his wife, his four children, and Leland Redd in proportion to the capital interests shown for each of them on LaSal's books. Withdrawals were made by the petitioner in 1941 totaling $29,574.03. No other withdrawals were made during 1941. Annaley Redd and each of the four children made withdrawals in 1942, 1943 and 1944 for the payment of income taxes and for the purchase of securities. The record does not contain balance sheets showing the condition of LaSal's business before and after the execution of the "Declaration of Gift and Quit Claim Deed," or at the end of 1941, nor does it contain a profit *160 and loss statement or other evidence showing the earnings for the period from June 10 to December 31, 1941. The Commissioner in determining the deficiency explained the contested adjustment as follows: It is held that the purported partnership between you, Leland W. Redd, Annaley Redd, Catherine Ann Redd, Charles Hardison Redd, Robert Byron Redd and Paul David Redd should not be recognized for Federal income tax purposes and that the net income of the partnership, LaSal Livestock Company, for the year 1941, viz. $75,015.47, is distributable as follows: Charles
Leland
Redd
W. Redd
Compensation for services
$ 3,000.00
None
97% of remainder
69,855.31
3% of remainder
$2,160.16
$72,855.31
$2,160.16
Your share of income of LaSal Live-
stock Company, as above
$72,855.31
Amount of income from LaSal Live-
stock Company reported in your in-
come tax return
11,641.86
Income from such partnership in-
creased
$61,213.45
The petitioner's wife and four minor children were not, for Federal income tax purposes, partners in the operation of the LaSal Livestock Company during any part of the year 1941. Opinion MURDOCK, Judge: The petitioner *161 contends that on June 10, 1941 he made a gift to his wife and each of his four children of a 17 per cent interest in the LaSal Livestock Company, of which he had theretofore owned a 97 per cent interest. He claims that on that date his wife and four children became partners with him and his cousin, Leland Redd, in the livestock business. It is conceded by the parties that Leland has at all material times held a 3 per cent partnership interest in LaSal. It is argued by the petitioner that he made valid gifts to his wife and children; they each had an unrestricted right to receive 17 per cent of the distributable profits of the business during the period in question; and the income must be taxed to them. He argues that he divested himself completely of control over and right to benefit from the interests allegedly transferred and points to the fact that the children were represented by a trustee until a guardian of their estates was appointed by court order in 1943. He also argues strenuously that all the steps taken were bona fide and legally sufficient for the formation of a valid partnership under Utah law. The possibility that the partnership was valid under state law is without *162 Federal income tax significance, says the respondent, since the arrangement in this case produced no substantial change in the donor's economic ownership of the business and amounts in effect to a reallocation of the business income within the family. He argues further that the partnership arrangement must fail because the evidence shows that Leland Redd did not, at least during the year here in question, agree to the formation of a new partnership. It is now well established that partnership arrangements such as were made in this case are not to be recognized for Federal income tax purposes. , (6/4/46); , (2/25/46); , (2/25/46); , (4/10/46); , aff'd (C.C.A. 4), , (5/16/46). This case presents a factual situation similar to that found in Here, as in that case, the petitioner claims that gifts to his wife and minor children of a portion of an existing business form a valid foundation for the establishment of a partnership *163 recognizable for Federal income tax purposes. Capital was a material factor in the production of income in both cases. The alleged new partners did not contribute any new capital to the business in either case. The wife in each case was little more than a companion to the husband and a participant to a minor degree in the discussion of questions of business policy. The Lang children were given part-time jobs in Lang's plant at an early age. The Redd children performed no services whatever. The oldest Redd child was only 7 years of age during the period in question. The youngest had just been born. The petitioner argues that the children performed services for LaSal through their guardian, Joseph F. Redd. We need not decide whether services of a guardian would make the partnership more real for income tax purposes. The evidence fails to show that Joseph Redd's services to the livestock company were appreciably different after June 10, 1941, when the new partnership was supposedly created, from the services rendered by him in prior years. The business continued to be conducted by the petitioner, assisted by Joseph Redd, as it had been in years past. The petitioner continued in complete *164 control of the operation of the business and Joseph Redd continued, as an employee, to supervise a part of LaSal's operations under authority delegated to him by the petitioner. His compensation remained small. Consideration of questions involving the rights and obligations of the wife and children under Utah law is unnecessary, since we hold that no valid partnership exists for Federal income tax purposes. Decision will be entered for the respondent.